J-S18044-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EUGENE WILLIAMS | : | |
| | : | |
| Appellant | : | No. 1528 MDA 2025 |

Appeal from the Judgment of Sentence Entered October 1, 2025
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0002395-2024

BEFORE:  DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: JULY 24, 2026**

Eugene Williams (Appellant) appeals from the judgment of sentence entered following his convictions for possession of a firearm prohibited, possession with intent to deliver, and possession of drug paraphernalia.[1]  We affirm.

The trial court summarized the factual history of this case as follows:

The following facts were established at a Suppression Hearing that took place on August 5, 2025.  (Notes of Testimony, Suppression Hearing, 8/5/25) ("N.T. Suppression Hearing").

On November 4, 2023, Trooper Gregory Archulet ("Trooper Archulet") initiated a traffic stop [of] [Appellant's] vehicle due to several moving violations.  (N.T. Suppression Hearing 7).  While [Appellant's] vehicle was in motion, Trooper Archulet initially observed [Appellant] drifting to the center line.  (N.T. Suppression Hearing 8).  Trooper Archulet then observed [Appellant's] vehicle

_____

[1] 18 Pa.C.S. § 6105(a)(1), 35 P.S.§ 780-113(a)(30), and § 780-113(a)(32), respectively.

drifting over the center line and then traveling onto the shoulder of the road. (N.T. Suppression Hearing 9). Trooper Archulet further observed [Appellant's] vehicle following the vehicle in front of him too closely and that [Appellant's] window tint was too dark. *Id*. After initiating a traffic stop and approaching [Appellant's] vehicle, Trooper Archulet collected [Appellant's] driver's license and registration and initially indicated that he planned on issuing a warning if [Appellant] was properly licensed, registered, and insured. (N.T. Suppression Hearing 17). However, Trooper Archulet observed a rolling tray and scissors in plain view in the front of the vehicle. (N.T. Suppression Hearing 10). Trooper Archulet further observed a vacuum sealed bag in the rear of the vehicle, marijuana shake,[2] and smelled a strong odor of marijuana coming from the vehicle. (N.T. Suppression Hearing 11).

[Appellant] provided Trooper Archulet with an expired medical marijuana card. (N.T. Suppression Hearing 13). [Appellant] denied Trooper Archulet consent to search his vehicle. *Id*. Trooper Archulet applied for a search warrant which was then granted by District Justice Zozos. *Id*. Within the search warrant, Trooper Archulet included the fact that [Appellant] told him that marijuana was present in his vehicle. (N.T. Suppression Hearing 14). Following a search of the vehicle, Trooper Archulet located a vacuum sealed bag of marijuana, packaging materials for marijuana, and two scales. *Id*.

Trial Court Opinion, 1/6/26, at 1-2.[3]

On November 22, 2023, the police filed a criminal complaint charging Appellant with the above-mentioned crimes, as well as three violations of the Motor Vehicle Code, and on July 30, 2024, the Commonwealth filed a criminal information.[4] Appellant filed a motion to suppress evidence on March 13,

---

[2] Trooper Archulet defined marijuana "shake" as marijuana residue. *See* N.T., 8/5/25, at 2.

[3] The trooper also recovered a tan 9mm Taurus pistol from under the driver's seat. Affidavit of Probable Cause, 11/22/23, at 2.

[4] The violations of the vehicle code were subsequently withdrawn.

2025, and the Commonwealth filed a response. On August 5, 2025, the trial court held a suppression hearing and denied Appellant's motion. The court immediately held a non-jury trial, at the conclusion of which it found Appellant guilty. On October 1, 2025, the trial court sentenced Appellant to serve a term of incarceration of four to eight years for the firearm violation, and a concurrent term of probation of two years for the conviction of PWID.[5]

Appellant's post-sentence motion was denied by the trial court on October 29, 2025. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

A. Did the lower court err in determining that there was reasonable suspicion to continue detaining [Appellant] and his car?

B. Did the lower court err in determining that the search warrant was supported by probable cause?

Appellant's Brief at 4.

Each of Appellant's issues pertain to whether the trial court properly denied his motion to suppress the evidence seized. With respect to an appeal from the denial of a motion to suppress, our Supreme Court has stated the following:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether

---

[5] On the conviction of drug paraphernalia, Appellant received a sentence of no further penalty.

- 3 -

the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.

We may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted ... . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts. *Commonwealth v. Williams*, 2008 PA Super 6, 941 A.2d 14, 26–27 (Pa. Super. 2008) (*en banc*) (citations, quotations, and quotation marks omitted).

*Commonwealth v. Williams*, 176 A.3d 298, 315 (Pa. Super. 2018).

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, "appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." *Commonwealth v. Stilo*, 138 A.3d 33, 35–36 (Pa. Super. 2016); *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013). In addition, questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Commonwealth v. Freidl*, 834 A.2d 638, 641 (Pa. Super. 2003).

Further, Pa.R.Crim.P. 581, which addresses the suppression of evidence, provides in relevant part as follows:

(H) The Commonwealth shall have the burden . . . of establishing that the challenged evidence was not obtained in violation of the defendant's rights.

Pa.R.Crim.P. 581(H).

First, Appellant concedes that Trooper Archulet's initial stop of his vehicle was valid. He maintains, however, that the trooper began a second investigative detention not supported by reasonable suspicion. *See* Appellant's Brief at 14-16. Appellant argues that "the stop was prolonged and required reasonable suspicion, given that the change from a traffic citation to discussing narcotics, in order to be a valid continual detention." *Id*. at 14. Appellant contends that "[o]nce Trooper Archulet ceased running [Appellant's] information and began inquiring as to whether he could search [Appellant's] car, he required reasonable suspicion to warrant this [subsequent] seizure." *Id*. at 16. Appellant posits that "[t]he suppression court erred because it based its finding of reasonable suspicion on the then [sic] smell of marijuana alone, potential drug paraphernalia and [Appellant's] behavior." *Id*.

To support his claim that the evidence must be suppressed, Appellant relies on our Supreme Court's decision in *Commonwealth v. Barr*, 266 A.3d 25, 44 (Pa. 2021) (holding that, following the enactment of the Medical Marijuana Act (MMA), "the odor of marijuana alone does not amount to probable cause to conduct a warrantless search of a vehicle but, rather, may be considered as a factor in examining the totality of the circumstances."). Upon review, we conclude the facts of this case render *Barr* distinguishable.

We initially observe that any technical traffic violation that is supported by probable cause legitimizes a stop. *See Whren v. United States*, 517 U.S. 806 (1996). "During a traffic stop, the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain

information confirming or dispelling the officer's suspicions [of criminal activity]." **Commonwealth v. Harris**, 176 A.3d 1009, 1020 (Pa. Super. 2017) (citation and internal quotation marks omitted). We explained that "if there is a legitimate stop for a traffic violation ... additional suspicion may arise before the initial stop's purpose has been fulfilled, then, detention may be permissible to investigate the new suspicions." **Id**. (citation omitted). This further detention must be supported by reasonable suspicion. Reasonable suspicion exists when there are specific and articulable facts that create a reasonable suspicion, based on the officer's experience, that there is criminal activity afoot. **See Commonwealth v. Sands**, 887 A.2d 261, 271-272 (Pa. Super. 2005). "[E]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer." **Commonwealth v. Carter**, 105 a.3d 765, 772 (Pa. Super. 2014) (*quoting* **Commonwealth v. Caban**, 60 A.3d 120, 129 (Pa. Super. 2012)).

Here, it is undisputed that the trooper possessed probable cause to conduct a traffic stop for suspected violations of the Motor Vehicle Code. **See** Appellant's Brief at 11 (conceding that "[i]t is not contested on appeal that [o]fficers had probable cause to effectuate the traffic stop."). Accordingly, we must examine whether the trooper had reasonable suspicion to further detain Appellant.

The trial court offered the following analysis concerning whether the state trooper had reasonable suspicion to prolong the traffic stop for further investigation:

In order to extend a traffic stop beyond the original reason for the stop, an officer must be able to articulate reasonable suspicion to believe that there is additional criminal activity taking place. ***Commonwealth v. Galloway***, 265 A.3d 810, 815 (Pa. Super. 2021). In this case, Trooper Archulet initially collected [Appellant's] driver's license and registration and informed him that he would likely let him off with a warning if he was properly licensed, registered, and insured. (N.T. Suppression Hearing 17). However, Trooper Archulet then observed, in plain view, a marijuana rolling tray, scissors, a vacuumed sealed bag, marijuana shake, and smelled a strong odor of marijuana coming from the vehicle. (N.T. Suppression Hearing 10-11). At this point, and without asking for more information, Trooper Archulet had reasonable suspicion to prolong the stop for further investigation. While the odor of marijuana by itself is not enough for reasonable suspicion, the odor coupled with the drug paraphernalia that is consistent with unauthorized use of even medical marijuana, is enough for reasonable suspicion under the totality of the circumstances. ***See Commonwealth v. Barr***, 266 A.3d 25 (Pa. 2021). Thus, we determined at the suppression hearing, and argue now, that there was reasonable suspicion for Trooper Archulet to prolong the traffic stop for further investigation.

Trial Court Opinion, 1/6/26, at 3.

Our review of the certified record reveals support for the trial court's reasoning. As explained by Trooper Archulet at the suppression hearing, "[t]here was a strong odor of marijuana coming from the vehicle." N.T., 8/5/25, at 11. However, the odor of marijuana was not the sole factor that led to reasonable suspicion of criminal activity. In addition, the trooper observed "a rolling tray and [cutting scissors] in plain view in the front of the vehicle." ***Id***. at 10.[6] The trooper also testified that he could see a bag in the back seat that appeared to be vacuum sealed. ***See id***. at 11. Trooper Archulet

---

[6] The trooper explained the tray and scissors are items of paraphernalia people use to prepare joints or blunts. ***See*** N.T., 8/5/25, at 10-11.

stated that he also observed what is known as "shake" or "marijuana residue" "located in the vehicle as well." *Id*.

We again observe that Appellant does not challenge the legality of the traffic stop. *See* Appellant's Brief at 11. Nevertheless, after the trooper initiated the valid stop, he acquired the requisite reasonable suspicion of criminal activity necessary to independently detain Appellant, which was divorced from the original authority to seize Appellant. In addition to the strong odor of marijuana coming from the vehicle, there was drug paraphernalia consistent with the use of marijuana in the front of the car, and there was also marijuana residue in the vehicle and what appeared to be a package of contraband in the rear seat. Based on the foregoing, we conclude that after initiating a valid traffic stop, the state trooper possessed reasonable suspicion that Appellant was engaged in criminal activity and properly detained Appellant for further investigation. Accordingly, the trial court did not abuse its discretion by denying suppression on these grounds and Appellant's contrary claim lacks merit.

Appellant next argues that there was not sufficient probable cause to support the issuance of the search warrant. *See* Appellant's Brief at 22-26. Specifically, Appellant asserts that "the case's probable cause determination turns on previously used marijuana, shake, and suspected paraphernalia that is also consistent with use during the legal period of MMA use. The smell of marijuana in this instance, without further information, allows someone who smoked marijuana previously in their car but has no contraband remaining in

the car to be searched solely based upon the smell. Prior unlawful use does not necessarily equate to present use." *Id*. at 24-25. Appellant claims that under these circumstances a warrant should not have been granted. *See id*. at 25-26.

We reiterate that our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial. *See L.J.*, 79 A.3d at 1085. Further, we are mindful of the following:

> "Probable cause" is a practical, non-technical concept. To establish probable cause, the Commonwealth must demonstrate that a search meets the requirements of the 'totality-of-the-circumstances' test. Pursuant to that test, when presented with an application for a warrant, "[a] magistrate is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*Barr*, 266 A.3d at 39-40 (citations omitted). *See also Commonwealth v. Korn*, 139 A.3d 249, 253 (Pa. Super. 2016) (an issuing authority must decide that probable cause exists at the time of its issuance and make this determination on facts that are described within the four corners of the supporting affidavit and closely related in time to the date of issuance of the warrant).

> It is equally well established that a reviewing court must pay great deference to an issuing authority's determination of probable cause for the issuance of a search warrant. Moreover, our Supreme Court has recognized that affidavits supporting search warrants normally are prepared, by nonlawyers in the midst and haste of a criminal investigation, and, accordingly, said affidavits,

should be interpreted in a common sense and realistic fashion rather than in a hypertechnical manner.

*Korn*, 139 A.3d at 253. We reiterate that "probable cause exists when, based upon a totality of the circumstances set forth in the affidavit of probable cause, there is a fair probability that evidence of a crime will be found in a particular place." *Id*. at 254.

> In reviewing this issue, the trial court offered the following analysis:

> In this case, Trooper Archulet observed a rolling tray and scissors in plain view in the front of the vehicle. (N.T. Suppression Hearing 10). He also observed a vacuum sealed bag in the rear of the vehicle, marijuana shake, and smelled a strong odor of marijuana coming from the vehicle. (N.T. Suppression Hearing 11). When asked, [Appellant] provided Trooper Archulet with an expired medical marijuana card. (N.T. Suppression Hearing 13). [Appellant] then denied Trooper Archulet consent to search his vehicle. *Id*. Trooper Archulet applied for a search warrant which was then granted by District Justice Zozos. *Id*. Within the search warrant application, Trooper Archulet included the fact that [Appellant] told him that marijuana was present in his vehicle. (N.T. Suppression Hearing 14). The information provided in the search warrant application by Trooper Archulet was sufficient for a probable cause belief that contraband or other evidence of a crime would be found in [Appellant's] vehicle.

Trial Court Opinion, 1/6/26, at 4.

Upon thorough review, we conclude the entirety of the facts indicate that the odor of marijuana was not the sole fact to support a finding of probable cause. Rather, the totality of the circumstances present, and the permissible inferences, are sufficient to warrant a person of reasonable caution to believe that a crime was being committed.

At the suppression hearing, the Commonwealth entered into the record the Application for Search Warrant with its accompanying Affidavit of Probable

Cause, which was prepared by Trooper Archulet.[7]  *See* N.T., 8/5/25, at 13-14.  Within the affidavit, the trooper explained that "he has been a member of the Pennsylvania State Police since February 2021." Commonwealth Exhibit 3, at 2, ¶ 1.  Pertinent to this case, Trooper Archulet offered the following related to his observations while speaking to Appellant at Appellant's vehicle:

> I approached the passenger side of the vehicle and advised the operator of the vehicle the reason for the traffic stop.  Within the vehicle I observed one male occupant and operator.  I observed a rolling tray with marijuana residue commonly referred to as 'Shake,' in plain view on the front passenger seat.  I also observed a pair of cutting scissors on top of the rolling tray.  These scissors also had shake residue on them.  I detected an odor of marijuana coming from the vehicle as I spoke to the operator. … I requested that [Appellant] exit the vehicle in order to continue discussing the business of the traffic stop.

*Id*. at 2, ¶ 3.  The trooper indicated the following concerning Appellant's behavior:

> As I spoke with [Appellant] he continually distanced himself from both me and my patrol vehicle.  …  I engaged [Appellant] in conversation.  I observed him to be overly nervous despite the fact that I had related to him I did not intend to cite him and would do my best to give him a warning.

*Id*. at 2, ¶ 5.  Trooper also noted that "[a] query of [Appellant's] criminal history showed narcotics charges for possession with intent to deliver in October 2002, August 2013, July 2013, as well as an additional narcotics charge in January 2018." *Id*.

---

[7] We note that the Commonwealth has erroneously appended to its Appellee's Brief as "Exhibit A," an Application for Search Warrant with its accompanying Affidavit of Probable Cause for an unrelated case.

The trooper offered the following pertaining to Appellant's admission that marijuana was located in the vehicle and his subsequent recanting of that disclosure:

> I asked [Appellant] if any illegal items were located within the vehicle to include: illegal firearms, marijuana, cocaine, heroin, meth, or large amounts of US Currency. [Appellant] related 'No,' to each of these items with the exception of marijuana. [Appellant] related that there was marijuana within the vehicle however he had a medical card. I requested [Appellant] provide me with the medical card which I observed to be expired on March 17, 2023. [Appellant] related that he knew the card was expired. [Appellant] then elaborated on the marijuana he had previously stated was within the vehicle by relating 'It's no more, there's nothing in there.' At this point I requested consent to search the vehicle and [Appellant] denied consent.

*Id*. at 3, ¶ 6.

A common-sense, nontechnical reading of the facts provided in the affidavit properly established a fair probability that contraband or evidence of a crime would be found in the vehicle. *Commonwealth v. Harvard*, 64 A.3d 690 (Pa. Super. 2013) (observing that common sense must be used to evaluate a magistrate's determination of probable cause). Therefore, we conclude that the trial court properly viewed the evidence presented in the affidavit and determined that the search warrant was issued with the requisite probable cause. Accordingly, it is our determination that the suppression court properly denied Appellant's motion to suppress the physical evidence found in the vehicle.

For the reasons set forth above, we conclude that no relief is due. Therefore, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>7/24/2026</u>